Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,401-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE:
KAITLYN LAYNE BOYD COBB APPLYING FOR INTRA FAMILY
ADOPTION OF A.E.C.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of West Carroll, Louisiana
Trial Court No. 332

Honorable John Clay Hamilton, Judge

* * * * *

| | |
|---|---|
| THE LOWERY LAW FIRM<br>By: Scotty Wayne Lowery | Counsel for Appellant,<br>Kaitlyn Layne Boyd<br>Cobb |
| BARRY W. DOWD, APLC<br>By: Barry W. Dowd | Counsel for Intervenor-<br>Appellee, Shelby<br>Danyell Smith |

* * * * *

Before STEPHENS, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Kaitlyn Layne Boyd Cobb, appeals the trial court's ruling denying her petition for intrafamily adoption and her motion for new trial. The trial court concluded the mother of the child met her burden of proving just cause for her failure to provide financial support and to visit and/or communicate with the child for a period of at least six months. For the following reasons, we affirm.

## FACTS

Defendant, Shelby Danyelle Smith ("the mother") and Landon Tylar Cobb ("the father"), are the parents of A.E.C, born December 16, 2011. At the time of A.E.C.'s birth, the mother was 14 years old, and the father was 17 years old. The mother has struggled with substance abuse issues and has been incarcerated for drug-related offenses.

In 2016, the father was granted sole custody of A.E.C., and the mother was granted limited supervised visitation at the father's discretion. The judgment further provided as follows:

> ***
>
> [A]ny visitation with the child, of any type, by [the mother] is contingent upon her enrollment in, and successful completion of, a drug and alcohol treatment program and random drug screenings through Northeast Louisiana Substance Abuse program in Oak Grove, Louisiana; and, should she fail to enroll in and successfully complete such a substance abuse program, or test positive at any time for illegal or illicit drugs, then any rights to visitation by her shall be terminated without further order of the Court[.]
>
> ***

The mother was also ordered to "ensure that all documentation of any drug screen or substance abuse program and all drug screen results be furnished to counsel for [the father]." Further, the mother was ordered to pay child support in the amount of $150 per month, in addition to arrears.

The mother was incarcerated when the judgment was entered. Additionally, the father was represented by counsel during the custody proceedings, but the mother was not.[1]

In 2017, the father began cohabiting with Kaitlyn Layne Boyd Cobb ("the stepmother"), and the couple married on December 11, 2021. Soon thereafter, on December 22, 2021, the stepmother filed a petition for the intrafamily adoption of A.E.C., alleging, *inter alia*, the mother had not provided financial support for the child in more than six months; the mother had not visited or communicated with the child in more than six months; the child had been living with her (the stepmother) for at least six months prior to the filing of the petition for adoption; the mother had forfeited her right to consent to the adoption; and it was in the best interest of the child to grant the petition for adoption. The father signed an affidavit concurring with the petition for adoption.

On February 14, 2022, a hearing on the adoption petition was held. The father and stepmother were represented by counsel, and the mother was unrepresented. The trial court determined it was in the best interest of the child for the adoption to proceed and granted the petition for adoption. The

---

[1] The judgment provided:

> PLEASE SEND JUDGMENT and NOTICE OF JUDGMENT TO:
>
> [The mother]
> 131 Taylor Steet
> Oak Grove, Louisiana 71263
>
> OR
>
> Morehouse Parish Jail

However, there is no indication of record the mother was ever served with the judgment or notice of judgment.

court signed a judgment terminating the parental rights of the mother and granting a final decree of adoption. The mother appealed, and this Court vacated the judgment, finding the mother had not been served with notice as mandated by La. Ch. C. art. 1247. *In re Boyd for Intra Fam. Adoption of A.E.C.*, 54,807 (La. App. 2 Cir. 9/21/22), 349 So. 3d 1035.

Following remand, a hearing was held. After hearing the testimony and reviewing the evidence, the trial court found the mother failed to comply with the court order to pay child support and failed to visit and/or communicate with the minor child for a period of at least six months. However, the court denied the petition for adoption, finding the mother met of burden of proving just cause for her failures. The trial court stated:

> [B]ased on the testimony and the exhibits introduced, consisting primarily of phone messages and text messages attempted by the mother, Shelby Smith, to communicate with the child, this Court finds that the mother has met her burden by a preponderance of the evidence, in establishing just cause for her failure to provide support or communicate with the child. This finding is based on the numerous and consistent attempts that the mother, Shelby Smith, made to establish communication with the child through phone conversations and text messages which were, for the most part, consistent and persistent subsequent to her release from prison. While this Court firmly believes that the mother's attempts to establish communication could have been more substantial, the Court finds that the low threshold of her burden, being only a preponderance of the evidence, has been established.

Thereafter, the stepmother filed a motion for new trial arguing the trial court "dispensed with the issue of 'best interest' and thus disposed of the entire adoption proceeding, thereby bypassing the need for an evidentiary hearing in accordance with La. Ch. C. 1253[.]" The stepmother also argued the court erred in failing to consider the child's wishes. Further, the stepmother took issue with the legal representation provided by the attorney

appointed to represent the child. According to the stepmother, the attorney did not "make contact with the family or interview the child prior to the hearing, did not examine or cross-examine any witnesses, called no witnesses on behalf of the child, and offered up no report on behalf of the child." The trial court denied the stepmother's motion for new trial, stating:

\*\*\*

[B]ecause this Court found that the mother's consent to the adoption was required, and that she had not executed an act of surrender nor had her parental rights been involuntarily terminated, that the Petition for Intra-Family Adoption should be dismissed, with no need to proceed to a "best interest" hearing.

\*\*\*

The stepmother appeals.

## DISCUSSION

The stepmother contends the trial court erred in denying her petition for intrafamily adoption. She argues she met her burden of proving the mother had not communicated with the child or paid child support for a period of at least six months; therefore, she made a prima facie showing the mother's consent to the adoption was not necessary. The stepmother further contends the burden shifted to the mother to show her failure was due to factors beyond her control, and she failed to meet that burden. Additionally, the stepmother asserts the trial court erred in refusing to make a determination of whether the adoption was in the best interest of the child in this case.

Intrafamily adoptions are authorized by the Louisiana Children's Code. The persons who may petition for an intrafamily adoption are set forth in La. Ch. C. art. 1243, which provides in pertinent part:

4

A. A stepparent *** may petition to adopt a child if all of the following elements are met:

(1) The petitioner is related to the child by blood, adoption, or affinity *** through a father who is filiated to the child in accordance with the Civil Code.

(2) The petitioner is *** a married person whose spouse is a joint petitioner.

(3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption[.]

Unless rights have been terminated, consent to the adoption of a child or relinquishment of parental rights shall be required of the mother of the child. *See*, La. Ch. C. art. 1193. With regard to instances in which parental consent to an intrafamily adoption is not required, La. Ch. C. art. 1245 provides in pertinent part:

A. The consent of the parent as required by Article 1193 may be dispensed with upon proof by clear and convincing evidence of the required elements of either Paragraph B or C of this Article at the hearing on the opposition and petition.
***
C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:

(1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.

(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.

The failure of a parent to communicate with the child or to provide court-ordered support for the child without just cause represents a failure by the parent to foster the parent-child relationship and allows a stepparent to adopt the child. *In re R.A.L.*, 54,052 (La. App. 2 Cir. 7/14/21), 323 So. 3d 1006; *In re D.L.D.*, 53,758 (La. App. 2 Cir. 1/13/21), 310 So. 3d 314; *In re*

*Puckett*, 49,046 (La. App. 2 Cir. 4/17/14), 137 So. 3d 1264. An intrafamily adoption terminates parental rights of the biological parent who has failed to contact and/or support the child without just cause. *See*, La. Ch. C. art. 1256.

The party petitioning the court for adoption carries the burden of proving a parent's consent is not required under the law by clear and convincing evidence. Once a prima facie case is proven, the burden of proof shifts to the nonconsenting parent to show his or her failure to visit the children or to comply with the child support order was due to factors beyond his or her control. *In re R.A.L.*, *supra*; *In re D.L.D.*, *supra*; *In re B.J.C. Applying for Intrafamily Adoption*, 51,110 (La. App. 2 Cir. 9/28/16), 206 So. 3d 337.

In the instant case, as the stepmother noted, she met her burden of proving the mother failed to visit and/or communicate with the child or to comply with the child support order for a period of at least six months. Thus, the burden of proof shifted to the mother to show her failure to visit the child or to comply with the child support order was due to factors beyond her control.

During the hearing, the father testified he works on a riverboat, which requires him to rotate "28 days on" followed by "14 days off." He stated the stepmother assumed the responsibility for communicating with the mother regarding the child. According to the father, the mother had not had any physical visitation with the child since March 28, 2016. Further, the father testified the mother was incarcerated when the custody/child support judgment was entered. He also stated the mother communicated with the

child via telephone when she was incarcerated, and she continued to do so after she was released. However, he testified the mother was not allowed to physically visit with the child because she had not complied with the court's order to submit proof of her completion of a rehabilitation program. He testified the mother had requested to "be a part of [A.E.C.]'s life"; however, he refused to "go against . . . what the Judge had written down for us to – to abide by." Additionally, the father testified in November 2021, less than one month before he and the stepmother were married, the mother asked the stepmother for their address so she could "send support." He admitted he and the stepmother refused to provide the mother with their address because he wanted to "talk to my attorney." The father stated the mother repeatedly attempted to communicate with the child via telephone until the stepmother declared, "We're stopping this." Shortly thereafter, he and the stepmother were married and filed the petition for adoption.

The stepmother testified the mother had never physically visited or enjoyed any "outings" with the child during the time she had been involved in the child's life. She stated the mother would intermittently ask to visit the child, and she told her "time and time that until we seen [sic] the drug screens and rehab proof, that we were sticking to the Court orders."

During cross-examination, the stepmother testified the mother sent her a text message in November 2021, asking for their address so she could send child support. She stated, "We told [the mother] we would have to speak to our lawyer[.]" The stepmother also admitted the mother had communicated with her and the child in November 2021, the same day she inquired about the address. She testified the mother talked to the child on the telephone on

7

numerous occasions in 2020, "whenever [the child] wished to talk." The stepmother further testified with regard to the mother's attempts to communicate with the child as follows:

> Well, around January was whenever [A.E.C.] decided that she no longer wanted to talk to [the mother] so for a couple of months I tried to keep the peace and just ignored the situation, you know, tell [the mother] '[A.E.C.] is playing' '[A.E.C.]'s doing this' and then around March is whenever we told [the mother] you know '[A.E.C.] has decided she doesn't want to talk any more. We'll let you know if and when she decides that she wants to communicate.'
> ***

The stepmother testified the mother continued to attempt to communicate multiple days of each month "for the most part," until the petition for adoption was filed. She also testified the mother was unaware A.E.C. owned a phone; therefore, all attempts to communicate with A.E.C. were made by contacting the stepmother's cell phone. The stepmother stated she acted as "the stepmother and communicator for [A.E.C.] for five and a half years," and the telephone conversations between A.E.C. and the mother occurred "at least every month to a month and a half."

Additionally, the stepmother testified she sent a photograph of the judgment to the mother because "[s]he needed to know what she needed to do in order to have visitation[.]" However, the photograph she provided was introduced into the record and did not include the child support order. Nevertheless, the stepmother insisted the mother "knew she was supposed to pay child support." She also stated the mother provided gifts for A.E.C. "on two birthdays, one Christmas and one Easter." She stated the mother did not have their "exact address"; however, "she knows where we live [because] it's a small town."

Moreover, the stepmother testified she and the father were not romantically involved when the 2016 custody/visitation/child support judgment was entered, and she was not present during those proceedings. However, she testified the mother was aware of the child support obligation because "we had spoke[n] about it," and she (the stepmother) "read off the Court papers to her." She stated the mother did not have a copy of the judgment, "or she had misplaced it," so she (the stepmother) read it to her "top to finish." The stepmother also testified she sent the mother "a picture of the papers." However, when asked to produce the text messages and/or photographs of the judgment she sent to the mother, the only portion of the judgment depicted in the text messages concerned the restrictions of visitation.

Rachel Brown testified she had known the stepmother and mother "all my life," and she had personally witnessed the mother's attempts to communicate with the child. Brown stated, "Sometimes she would call and they would let her talk, sometimes [the stepmother] wouldn't let her talk, [the stepmother] would say, '[A.E.C.]'s busy[.]'" Brown also testified the mother would attempt to communicate with the child by texting the stepmother, and if the stepmother did not respond to the text message or answer the phone, the mother would "just call her the next day." Brown further testified while in the company of the stepmother, she had witnessed the stepmother telling the mother the child did not want to speak to her without conferring with the child. Additionally, Brown stated the stepmother stopped allowing the mother to talk to A.E.C. in January 2021;

9

however, the mother continued to "call her at least every week" throughout 2021.

Donna Smith, A.E.C.'s maternal grandmother, testified she had known the stepmother "most of her life." She stated she was initially allowed physical visitation with the child; however, the father "stopped letting me see her." Smith also testified the mother was allowed to talk to A.E.C. on the telephone until "probably January or February" of 2021, and the stepmother prevented the mother from contacting the child throughout 2021. Jeff Smith and Lisa Smith, the mother's father and stepmother, also testified with regard to the mother's futile attempts to communicate A.E.C. Lisa Smith testified she facilitated gift exchanges for A.E.C, *i.e.*, the mother would bring the gifts to Lisa's store, and the stepmother would pick them up.

Taylor Smith, the mother's sister, testified she had been present when the mother attempted to contact A.E.C., and the stepmother would not allow the mother to speak to the child. Taylor stated she was unable to recall the frequency of the mother's attempts; however, she stated, "She tried often" throughout 2020 and 2021.

The mother testified A.E.C. lived with her until the first time she was incarcerated (September 2015). During that time, her mother brought the child to visit her in jail every week. She stated after she was released from jail in 2015, she and the father lived together "until I found out he hired an attorney." She stated she was arrested again approximately six months after her release, and the father refused to allow the child to visit her. The mother further testified she was incarcerated when the custody and child support judgment was entered, and she was not provided with notice of the hearing.

10

She stated she was never served with a copy of the judgment, but she recalled receiving a photograph of it from the stepmother. The mother testified she saw the custody/visitation/child support judgment for the first time after the stepmother filed the petition for adoption. She also testified the stepmother was not being truthful when she (the stepmother) stated she had read the entire judgment to her (the mother).

The mother also testified after she was released from jail in December 2019 and she attempted to enroll in a substance abuse program, but "because of Covid, they [were] only taking a certain amount of people." She stated she talked to the child on the telephone "like every week," and she would send text messages on the days she was not allowed to speak to her. She further testified she last spoke to A.E.C. on the telephone in January 2021. Thereafter, the stepmother began to give her excuses as to why the could not speak to the child. According to the mother, the stepmother "would not pick up the phone or she would say, "[A.E.C.] didn't want to talk." She testified the stepmother told her the child was upset and did not want to talk to her because she (the mother) was pregnant. The mother testified she continued to attempt to communicate with the child, but the stepmother would respond by stating the child did not want to talk to her. She continued to send text messages to the stepmother attempting to talk to A.E.C.; however, the stepmother refused her requests to communicate with the child, and at one point, threatened to file for a restraining order. The mother stated the stepmother "would always threaten to put a restraining order on me if I was at the ball park or something, in a public place."

With regard to child support, the mother testified she had given A.E.C. money and gifts over the years. However, she admitted she had never given the father or the stepmother any money to benefit the child prior to the filing of the petition for adoption. She testified the stepmother informed her she had been ordered by the court to pay child support, but when she asked the stepmother for their address, she was told "they would have to speak to their lawyer." She asserted she had not seen the portion of the judgment pertaining to child support, and she did not know anything about it "other than what [the stepmother] said." She testified she saw the entire judgment for the first time when she received the petition for adoption.

The stepmother testified as a rebuttal witness. She stated in 2020, she verbally informed the mother about the child support provisions of the custody judgment.

We have reviewed this record in its entirety. The record shows the mother did not visit or communicate with the child for a period of at least six months. However, the record clearly demonstrates the mother was persistent in her efforts to communicate with A.E.C. via telephone calls and text messages. However, the stepmother was just as incessant in denying the mother access to A.E.C. and in impeding the mother's attempts to have a relationship with the child. The father even testified the mother repeatedly attempted to communicate with the child by telephone, and the stepmother stated, "We're stopping this." According to the testimony of witnesses, the stepmother was dogmatic in her efforts to prevent communication between the mother and child, including threatening to obtain a restraining order.

Based on this record, we find the trial court did not err in finding the mother met her burden of proving just cause for her failure to communicate with the child.

The record also demonstrates the mother did not pay the court-ordered child support for a period of at least six months, and the trial court found just cause for her failure to do so. There is no indication in the record the mother was ever provided with a copy of the child support judgment. The stepmother testified she informed the mother of the order pertaining to child support. However, the copies of the text messages between the mother and stepmother belied her testimony, as the text messages included only the portion of the judgment regarding visitation. Once the mother was informed of the obligation to pay child support, she asked for the address to send the payments, but the father and stepmother admittedly refused to provide her with the address, stating they wanted to speak to their lawyer. Rather than allowing the mother to initiate child support payments, the mother and stepfather were married the following month, and the petition for adoption was filed within days of the marriage.

Based upon the facts of this case, we find the trial court was not manifestly erroneous or clearly wrong in determining the mother had just cause for her failure to pay child support for at least six months. The record also supports the trial court's finding there is no need to proceed with a best interest of the child hearing. Consequently, based upon this record, the trial court did not err in denying the stepmother's petition for adoption and motion for new trial. The court's ruling was not contrary to the law and the evidence.

13

The stepmother also contends the trial court erred in appointing Molly Clement to represent the child because Ms. Clement had a nonwaivable conflict of interest.[2] Additionally, according to the stepmother, Ms. Clement's representation of the child was inadequate in the following aspects: (1) she did not contact the family or interview the child prior to the hearing; (2) she did not examine or cross-examine any witnesses; (3) she did not call any witnesses to testify; (4) she did not offer any report(s) or evidence on behalf of the child; and (5) she only attended one hour of the day-long hearing.

Moreover, the stepmother asserts although the trial court appointed Ms. Clement, the court did not address her directly during the proceedings, and Ms. Clement did not participate in the proceedings by asking any questions or submitting any evidence. Therefore, the child was deprived of her constitutional rights to be represented by counsel.

Throughout the Children's Code, independent counsel is typically required for the child in disputed cases. La. Ch. C. art. 1244.1(B) provides:

> Upon receipt of the opposition, the court shall appoint an attorney to represent the child, subject to the limitations in Article 1121. Neither the child nor anyone purporting to act on his behalf may be permitted to waive this right. The costs of the representation of the child shall be taxed as costs of court.

The record reveals at the outset of the hearing, the attorney appointed the represent the child stated:

> I just wanted to note my presence in the Courtroom. I was appointed to represent the child in this matter. I don't think I will play much of a role other than observer today but I wanted to go on record.

---

[2] The stepmother alleges the mother had consulted with and obtained advice from Ms. Clement in the initial proceedings. However, there is no evidence in the record to support the allegation.

We first note counsel for the stepmother did not object to counsel's statement and did not raise the issue of the performance (or lack thereof) of counsel at any point during the hearing. Moreover, Ms. Clement was appointed to provide independent qualified legal representation for the child, and the role of the child's counsel did not include aiding or bolstering the case of either of the parties. The child was not a party in the proceedings, and it was not incumbent upon her counsel to present any evidence or examine any witnesses. Under the facts of this case, the presentation of evidence and examination of witness was solely the responsibility of counsel for the parties. Furthermore, the stepmother has offered no proof of appointed counsel's alleged conflict of interest or of her lack of qualifications to provide legal representation for the child. This assignment lacks merit.

## CONCLUSION

For the reasons set forth herein, we affirm the trial court judgment denying the stepmother's request for an intrafamily adoption of A.E.C. and the denial of her motion for new trial. Costs of this appeal are assessed to the stepmother, Kaitlyn Layne Boyd Cobb.

**AFFIRMED.**